FRANK LANZA, Respondent, *v.* SOUTHERN PACIFIC COMPANY, Appellant.

First Department, December 15, 1916.

Master and servant — negligence — injury to longshoreman by falling through open hatchway — evidence.

In an action for personal injuries resulting from a fall through an open hatchway while working as a longshoreman unloading lumber from one of defendant's ships, it was claimed by the plaintiff that the cover of the hatch had been removed without his knowledge during his temporary absence from the ship, and that upon his return he did not observe that the hatch was uncovered because of insufficient light and of the fact that he had just come in from the outside. Evidence examined, and *held*, that a judgment in favor of the plaintiff should be reversed and a new trial granted.

APPEAL by the defendant, Southern Pacific Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 31st day of January, 1916, upon the verdict of a jury, and also from an order entered in said clerk's office on the 3d day of February, 1916, denying defendant's motion for a new trial made upon the minutes.

*J. Ard Haughwout* [*Everett J. Esselstyn* with him on the brief], for the appellant.

*Maxwell S. Harris*, for the respondent.

DAVIS, J.:

The plaintiff recovered a judgment, entered upon a verdict of $4,000, for personal injuries resulting from a fall through an open hatchway while working as a longshoreman unloading lumber from one of the defendant's steamships.

The accident happened on August 5, 1912, on the steamship *Proteus*, at Pier 49, North river. The plaintiff, who was thirty-seven years of age, was a longshoreman, and had been in the employ of the defendant for about four years. He had worked as a longshoreman in work of the same kind for ten years. On the day in question he was working with a gang, the foreman of which was Alex Rothberg under whom he had been working for about a year. There were six men in the gang engaged in unloading the vessel. They began work at seven-thirty in the morning and continued until ten o'clock unloading the upper 'tween decks. They then went into the hold of the vessel through hatch No. 2 which is the hatch through which the plaintiff subsequently fell, and worked until about three in the afternoon, taking a rest between twelve and one o'clock at which time they went down again into the hold. The hold was completely unloaded about three o'clock and the men came up through the same hatchway, No. 2. The plaintiff testified that the covers were then put on this hatchway and that they were put to work unloading some yellow pine lumber which had been piled on either side of the central stanchions immediately forward of No. 2 hatch. This lumber consisted of large beams from eighteen to twenty-two feet long and eight to twelve inches wide. There were about

forty-three pieces piled one on top of the other. They were so piled that their ends touched the bulkhead. The distance between the bulkhead and the hatch was twenty-six feet. Thus it appears that between the end of the timbers and the brink of the hatch there was a space of at least four feet. The pile of timber was from seven to nine feet high, thus reaching nearly to the deck above. Each one of the six men engaged in this work had a cotton hook. The hatch was eight by ten feet square. The plaintiff was working at the end of the timbers nearest the hatch and the other men were stationed at different points between that point and the forward bulkhead. The manner in which this timber was handled by the men was disputed. The plaintiff and his witnesses testified that the timbers were pulled out and dropped from the top of the tiers onto some sticks on the deck, the men jumping away from the timbers to avoid being struck. The men would loosen the timber a little, then fall back and the plaintiff would then give the timber a push causing it to fall down, he at the same time jumping back upon the covered hatchway. The defendant's witnesses on the other hand testified that the tiers were so arranged as to make steps and that the timbers were then eased down from one tier to the other and that they were not dropped on the deck as described by plaintiff's witnesses. After the timbers were pulled out they were loaded on trucks and taken through the bulkhead door and then out through the cargo port to a lighter.

The plaintiff testified that when they started to unload the timber the covers were on the hatch; that he worked for about twenty minutes on the timber and then under the direction of his foreman he went out on the dock to pile up some bags of rice to make room for the lumber which was being taken out of the ship. After working on the dock for from thirty to forty minutes he was again sent back to the ship to help with the timber. On reaching the hatchway to resume work he saw one piece of timber upon the deck and helped load it on a truck. He then pulled out another piece, and as he threw it down he sprang back as he had done before and fell into the open hatch. He claims that the covers of the hatch had been removed without his knowledge during the thirty or forty

minutes he was on the dock. The plaintiff says that when he resumed his work between decks he did not observe that the hatch was uncovered. He attributed this to insufficient light and to the fact that he had just come in from the outside light. The action was tried as one under the employers' liability provisions of the Labor Law (Consol. Laws, chap. 31 [Laws of 1909, chap. 36], art. 14), as amended by chapter 352 of the Laws of 1910.

Several witnesses were called by the plaintiff, all of whom gave testimony as to the way the accident happened, the condition of the hatch before the plaintiff left the deck to work upon the dock, and as to the alleged removal of the covers of the hatch during his absence. They also testified as to bad lighting of the space around the hatchway. The plaintiff's witnesses were contradicted by defendant's foreman and three other men who were working in the gang at the time of the accident. In effect they testified that the hatch covers were off the hatch when they began taking out the lumber and remained off down to the time of the accident, and the foreman testified that he did not order plaintiff to go upon the dock. They also testified as to the lighting between decks.

There was thus a sharp conflict of evidence on the issue of the defendant's negligence. Apparently the decision of this issue was made to depend upon the question of whether or not the hatchway was covered when the men began work on the lumber, and whether by order of defendant's foreman the hatch covers were removed during a temporary absence of the plaintiff from between decks, and whether there was sufficient lighting.

We think the weight of the evidence is clearly in favor of the defendant on the issue of defendant's negligence, and that the jury's finding is wrong on this point. We are also of the opinion that the weight of evidence on the issue of the plaintiff's contributory negligence is in favor of the defendant. Doubtless the verdict was to a large extent due to the failure of the learned trial justice to indicate to the jury more specifically what acts of the defendant, if any, would justify a finding of negligence, and from what proven facts the jury might find that the plaintiff was guilty of contributory negligence. Without adequate instructions on these issues the jury might

easily be left in doubt, if not in ignorance, of the relation which the evidence bore to the issues involved, and thus make the wrong findings which now require the reversal of this judgment.

The judgment and order are reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., SCOTT, SMITH and PAGE, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.